Coming down the home stretch, we're going to hear Elavon v. Merrick. Thank you all for your patience through the morning. Mr. Ginsberg. Yes, good afternoon to the panel. May it please the Court, my name is Daniel Ginsberg of the Ginsberg Law Firm, and I represent the plaintiff, Melanie Elavon, Incorporated, in this case. I need you to speak up. Oh, speak up? Sure. Yes, I'm having trouble hearing you. Okay, I will do that, Judge. The district court in this case found that the statute of limitations barred Elavon's claims despite... I'm sorry, before you turn to the merits, could you address our jurisdiction over this appeal? Sure. We asked for supplemental briefing, and I think that's the threshold we have to get past before we turn to the merits. I'm concerned that we may not have jurisdiction because there are, the action is still pending in the district court. There are non-moving parties. The defendants, they're still pending claims against them. And the court has issued a certificate under Rule 54B asking us to resolve these questions. I understood in your supplemental briefing to be saying that all that is left for the district court to do is to grant a pending motion to confirm the arbitral award. Has that happened? It has not happened yet, Your Honor. So that's still pending? I filed it as a summary judgment motion because the ECF does not have a motion to confirm an arbitral award, but that's essentially what it is. Why did that take the same docket number as the underlying case? I'm sorry, Your Honor? Why did the case to confirm the arbitral award take the same docket number as the underlying case? That seems to me irregular. I think, Judge Pooler, the reason is that Elevon first filed this action against the, what I call the arbitration defendants, and they moved to compel arbitration. That motion was granted. We conducted the arbitration. And so then I came back to the district court under the same docket number and filed a motion to confirm the arbitral. You called it a supplemental complaint or something? But what it was was really a motion to confirm an arbitral award. Wasn't that what it was? It was. And the reason for the supplemental complaint was that when we originally filed the complaint, we named the defendants whose identities we were aware of and John Doe's 1 through 10 or 25, whatever it was. And then once we took some initial discovery and the arbitration defendants moved to compel arbitration, that motion was granted. We found out the cardholder defendants' identities. We filed an amended complaint. And because the motion to compel arbitration was granted, I did not include those folks that moved to compel arbitration into the amended complaint. In essence, you had one complaint against two sets of defendants, one of which was subject to arbitration, the others of which not. And now there's an arbitral award that was made against one subset of defendants. You've moved for confirmation. You say that all that's left is for the district court to execute on that arbitral award and enter it. But in my experience, people often object to the entry of an arbitral award. They make challenges to an arbitral award. We don't, I don't know what's going to happen here. Perhaps you do. But with that still pending and these two groups of defendants, it doesn't look to me as though we have a final judgment against all parties. Why am I wrong in having that concern? Concern is valid, Your Honor, of course. What I would say is that the, well, we know that the arbitration defendants will not be opposing the motion because the time for them to do so has come and gone. But the district court still hasn't entered any final order as to that motion to confirm. Correct. That motion has not been decided. But our position on that is that the, really the motion to confirm is really the nature of an execution of a judgment. But parties object to the entry of, you know, confirmation orders. They do. They do. But the defendants in this case have not. Or I shouldn't say the defendants, the arbitration defendants. They did not oppose the motion. It's still not over, though, is it? I'm sorry? It's still not over. It's not, there's no final order. Well, there's no final order in the sense that the motion to confirm the arbitral award hasn't been issued. But, again, our position on that is simply the defendants have not objected to it. They haven't moved to vacate. And the only thing that remains to be done is for the court to do what nobody objects to, which is just to convert the arbitral award, which is final and binding, into a judgment of the court. And, in fact, I think, as we said in the supplemental briefing, the fact that, first of all, we didn't have to move for a final confirmation. The defendants could have simply paid the award. But there's a practical sense and there's a formal sense. You know, we have only jurisdiction over final judgments against, you know, all matters pending under an action. And it seems to me that this aspect is open still. And so that I gather that your position is that it's practically final. Well, I would say that, again, it's in the nature of an execution, meaning it's a post-judgment proceeding almost to confirm the arbitral award. Because the arbitration award is final. Nobody has objected to it. The arbitrator has said this is a final award. And, again, the defendants have not considered converting the arbitral award. The time for them to try to vacate the award under the Federal Arbitration Act has passed. That's a jurisdictional issue. They can't come back and do it, even if they all of a sudden belatedly file opposition, which it's been six months. I don't think they're going to do that. So for the reasons, and based on the case law that we submitted in the supplemental briefing, there's really nothing would be gained by awaiting the entry of that order. Because even if, for whatever reason, the district court would decide not to grant confirmation, that wouldn't reopen the litigation. There was nothing left to be done in the case. But there's no final order. Is that correct? Well, there is a final judgment in this case. The clerk did enter a judgment with respect to the cardholder defendants. And if the arbitration confirmation was at a different number, that you're right, this case would be ready for decision. But since you put it under the same docket number, we have a non-final judgment in the motion for confirmation. Again, Judge Poole, I guess what I would say is that under this court's precedence, the fact that there is a arbitral award that's pending, that is otherwise final, that nobody has objected to, does not take away from this court's jurisdiction. What case do you point to for having jurisdiction for treating as a final judgment when there's a pending motion to confirm an arbitral award in the same docket number in the district court? I don't have the cases right in front of me, but it's the cases that we cited in the supplemental brief that we submitted, in which throughout the late 80s and the 90s, the court has said that for purposes of finality, there's no reason to await the confirmation of an arbitral award that nobody objects to if the arbitral award is final, which it is in this case. My time has expired. I don't know if I should move on to the merits briefly. I tell you what, why don't you take a seat, but you're going to have an opportunity to come back again, and we won't pin you down on the, we'll try to give you some opportunity to do the merits on your next step up. Thank you, Your Honor. Mr. Gerowitz. Good afternoon, Your Honors. May it please the Court. As far as the jurisdictional issue, our position is that as to these defendants, it was a final order, that the district court intended this to be as a final order. If the court determines otherwise, what we would ask is, what I would analogize it to is like a Jacobson remand, where we just send it back for the entry of an appealable order under Rule 54, rather than requiring the parties to rebrief everything. Or, I suppose, entry of an appealable order, or a determination that it's not, in fact, a final judgment. Right. Right. The court may have a different idea. You mean the court below may have that? Yeah. I suppose that, but I think the intent was certainly when it entered its order and it issued a final judgment the same day, that it intended at least to these parties, because this was really a separate track. Well, what do we do with the, there's a handful of people against whom the court had entered a default, but not a default judgment. And, you know, technically, we can take these appeals. Usually there's a 54B certification. Are we to I don't represent those defendants, but I believe that the argument that the court ultimately dismissed on would be dispositive as to those defendants as well. Right. But as to the finality of the judgment, which is this question we're talking about, in the absence of a separate certification, can we treat it as final when there are also some defaults that, I mean, it may be a formality to enter the default judgment, but it's a It's unclear to me where the court should land on that question, but I think given the fact that even as to those defendants, the issue raised by those defendants would really be determined by this appeal. If the court were to affirm here, the district court, I think that would really end the litigation for the default defendant judgment, the default defendants as well. Right. Which would be the reason why it would be a problem to go forward if there hadn't been a final judgment, right? Because then they haven't had a chance to be part of this. But I don't think they could be kind of complaining of that when they defaulted. Right. I agree. I don't know. I mean, I could address kind of what I think the arguments my colleague will make, but from the base of the briefing, appellant's position appears to be that it could create an issue of fact by contradicting its own pleadings. And that's simply without any basis. All of the cases cited in appellant's reply involved disputes between the parties creating a factual issue, not a manufactured contradiction between the parties, the plaintiff's own pleading, which is really what's happened here. Here, the face of the complaint states explicitly that Elevon is located in either Tennessee, where its business was located, or Georgia, where it resides. Indeed, if Elevon truly believed that U.S. Bank was the relevant entity, it would have had U.S. Bank brought that suit. And it would have alleged that U.S. Bank suffered that harm. I realize that it's being set up as Minnesota versus Tennessee or Georgia, but I'm actually interested in the Tennessee versus Georgia distinction, because at least we're told that there's a tolling provision in Georgia that may impact the effect of the statute here. And I'm wondering, it seems like New York courts say what you just said, which is it's either, the injury is felt either in the primary place of business or the place of incorporation. If we resolve that by saying it was the place of incorporation, is it clear on the record we have before us now that we'd still be dealing with the three-year statute of limitations, or would there be need for further proceedings on the tolling? Plaintiffs raise the tolling argument in the district court. The defendants oppose that, saying that they're wrong on Georgia law. Ultimately, the district court decided it didn't have to decide it, because the shorter statute of limitations was Tennessee, and it dismissed on that. So I don't think that that would Georgia would really be relevant. Even on the Georgia statute, the position of the defendants below was that it would be time hard, because they're just wrong on the law of tolling. And that was all in the briefing. And so nothing cited by the appellants in their briefing is inconsistent with the position of appellees here. In Lane, which all of these cases, none of them were cited in the district court. They cited no authority, and that's really what the district court said, because you haven't given me any reason to believe that the In Lane, the plaintiff's bank accounts were set up in Massachusetts, and that's where the financial losses occurred. So the court found, yes, that's where the harm was, and therefore it applied Massachusetts law as opposed to Canada law. As in Lane, Elavon's financial accounts were located in Tennessee, which is why the complaint in its first the payments at issue were made by the parent company and approved by the board of the parent company. Nothing like that is in this case. Indeed, in its reply, Elavon argues that its cases that it relies on stand for the proposition that, quote, a plaintiff's deliberate decision to keep funds in a certain location is sufficient for a finding that financial injury occurred at that location. The funds here were in Tennessee. That's where the money went out. That's where it was located. So even under their description of their cases, the court should affirm. In IDK, the argument was that the statute of limitations should be governed by the location of the parent company because the losses flowed to the parent company and were consolidated in the parent's financials. That's precisely what Appellant argues here, and IDK rejected that as sufficient because the actual loss sustained was the subsidiary, which is precisely in that case, the IDK, it was the subsidiary that suffered the loss, and in this case, it's Elavon that suffers the loss. Is Appellant making a slightly more subtle argument that this isn't in fact a first instance hit in Minnesota because that's where the bookkeeping is documented? That's not what the complaint alleges. I think it's very clear, and I think the reason why the complaint alleges the way it does that Elavon suffered the loss is because you have consolidated financials where it's a bookkeeping entry at the end of the day where it gets wrapped up below, but where the banking is and where the losses are is all in Tennessee where Elavon is located. They're looking for a way to try to save this complaint, which they came up with during motions, but it just doesn't comport with the facts and doesn't comport with their complaint. The bottom line is Elavon is located in Tennessee. Elavon is the plaintiff here. Elavon resides in Tennessee, and that's where the damages were incurred. As far as the unjust enrichment, if the court wants me to address that, I think there are three problems with Appellant's position. First, wholly apart from New York law and whether there's a disagreement under New York law, Tennessee law is clear that the statute of limitations for an unjust enrichment claim is three years. If this court concludes, as Judge Brody did, that the plaintiff resides in Tennessee, Appellant has no argument. That would be the end. Second, Appellant never made the argument that it makes here in this court that there's somehow a dispute in New York for the statute of limitation. In its brief, without any authority, it just said that New York law is six years for unjust enrichment, but that was in response to Appellee's brief in the moving brief, which specifically cited authority for the proposition that it's a three-year statute of limitations. So just to not really respond to the argument, not give the court any authority, and now complain, oh, the district court was wrong, that's why we have a plain error rule, and that's why in the first instance you should make these arguments. But finally, as Judge Nason concluded in the City of Almaty, where the nature of the claim is for a monetary harm and the nature of the relief is compensatory damages, even the first department would find a three-year statute of limitations, and that's what Judge Nason said. And so I think that's the case. Thank you. Mr. Ginsburg. Thank you, Your Honor. I think this Court has held consistently that the statute of limitations is an affirmative defense, and affirmative defenses must be pleaded and proven. And so when there's an issue of fact with respect to a statute of limitations issue, it's up to a fact-finder to resolve that matter. And what the district court did in this case is resolve the matter as a matter of law on the strength of one case alone, that's the IKB case. And I'll get to that case in a minute, but what the court also said is that Elvan didn't cite any case in which the damages accrued in a place other than the plaintiff's residence, but we did, and that's the Lane case. We cited that case to the district court. And so we believe that that was an error on the district court's part that warrants reversal. And defendant's primary argument, really their sole argument in connection with the fraud claim, is that, well, the amended complaint lists Elvan as the entity that lost the funds. And based on that, the defendants contend that the district court should simply have disregarded the declaration of Holly Franklin, and in fact, the district court did not disregard Ms. Franklin's declaration. It reviewed the declaration and it misinterpreted, respectfully to the district court, the holding of the New York State court case, the IKB case, and accepted the defendant's position that Elvan was simply, it's a subsidiary and it's grabbing the statute of limitations from Minnesota because that's where its parent is located. But that's not what happened here. And we cited the PSS Steamship Company because that had a very succinct explanation of how corporations and affiliated entities can join their losses and report them on a single tax return. And when they do that, they're treated as a single corporation for tax purposes. And we analogize to that and we say the same thing here. U.S. Bank and Elvan are separate but affiliated entities. They chose for U.S. Bank to be the entity to take the profits and losses for the group. And so the net operating losses are aggregated under U.S. Bank. Am I right, though, and I need to go back and look at your declaration, but I know that it talks about the reporting happening in the context of the parents reporting in Minnesota. There's no declaration that your client's financial accounts are maintained in Minnesota or any state other than its primary place of business, right? There's no argument that its credit card processing business is operated out of Minnesota or any state other than its primary place of business, right? And so that leads me to respond to what my colleague said. He called it a manufacturing of an issue of fact. I think that's what we do on summary judgment. Manufacture is a bit of a loaded term. It kind of connotes a little bit of deviousness. I don't think there was anything devious here, but that's what we do. We create issues of fact and we say we know that everyone's bank accounts are located in Minnesota. They're not located in Tennessee. And the defendants don't need to accept that at face value. What they could do is take discovery on that issue and come back to the district court and say we took discovery on this issue, and in fact, like in Lange, or unlike in Lange, the bank accounts are not located in Minnesota, and therefore we should prevail. What do you mean when you say in your brief that, in fact, plaintiff did not suffer a financial loss at all because it does not even prepare its own financials? What did you mean by that? I mean, I was troubled by that. How are you even bringing this lawsuit, if that's the case? Well, plaintiffs suffered a loss, but that loss was for purposes of finance. So it was accounting, not cash, that U.S. Bank lost. They just dealt with the accounting. There was no cash. Well, the cash was paid out by Elevon, and that loss was reported by U.S. Bank. So where was the loss felt? Our position is that the loss was felt in Minnesota because that is the entity that actually accepted the loss for purposes of financial reporting and tax reporting. So why aren't they the proper plaintiff? And when you say plaintiff did not suffer a financial loss at all, why are you the proper plaintiff here? Because plaintiff is the contracting party. So Elevon contracted with Silvertown, but the actual losses, the actual financial loss, because we're not dealing with literally cash. We're dealing with electronic financial transactions. And those losses were felt by U.S. Bank in Minnesota because Elevon forwards all of its losses onto U.S. Bank. U.S. Bank accepts them for consolidated reporting purposes and for tax purposes. So when I say that Elevon did not suffer a financial loss, that is because Elevon did not actually pay out any money. All the money was paid out by U.S. Bank because that's where Elevon's bank accounts are. And again, I'll concede that that specific aspect was not set forth in the record, but our position is that we have, by submitting what we did submit, which is a Declaration of Highly Frankly, we've created an issue of fact. And based on that issue of fact, the district court should have done one of two things. Either deny the motion to dismiss and say bring it up again on summary judgment after you've done discovery. Or the district court could have said, you know what, instead of doing all sorts of discovery, I might kick this case out on statute of limitation on summary judgment, limit your discovery, your initial discovery, take 30, 60 days, do some document requests, do some interrogatories, and then you can come back to me either, or you don't have to come back to me, but if warranted, you can come back to me and raise the same issue, this time on a full record as opposed to a sole declaration. Do we have to conclude, though, that the Declaration of Highly Franks at least creates on its own, creates enough of an issue about where the injury was felt? We'd have to conclude that where the bookkeeping happens is plausibly sufficient to change where the injury or dictate where the injury is felt. Is that right? I think it's more than just bookkeeping, because bookkeeping connotes literally writing down something on a ledger. This is, U.S. Bank literally took the losses on behalf of Ellabont, and so I think as the district court put it, not our district court, but one of the other district courts, is where was the injury felt? The injury was felt in Minnesota because it was U.S. Bank that actually said we took a million dollar loss as a result of what the defendants did, and U.S. Bank is located in Minnesota. If everybody's set, then I think we appreciate your arguments. Thank you very much, Your Honors. And that concludes today's calendar. Thanks, everybody, for your patience. Appreciate CSO, courtroom deputies' patience, and you can call the adjournment, please. Court stands adjourned.